UNITED STATES DISTRICT AND BANKRUPTCY COURTS

for the

DISTRICT OF COLUMBIA

JIN YANG

PLAINTIFF

VS.

ICS Protective Service

Embassy of the People's Republic of China in the United States of America

Department of State of the United States of America

China Construction America of South Carolina, Inc.

CIV

Case: 1:22-cv-03836 JURY DEMAND
Assigned To : McFadden, Trevor N.
Assign. Date : 12/29/2022
Description: Pro Se Gen. Civ. (F-DECK)

**COMPLAINT**

JURY TRIAL DEMANDED

## **COMPLAINT**

Jin Yang, who is Plaintiff in this case, hereby states under the penalty of perjury as follows:

1. Around 9 p.m. on September 20, 2022, Plaintiff Jin Yang (a US citizen from Seattle and once a reporter covering the 1989 Tiananmen Square massacre) and her photography assistant Jemin Bai arrived in front of the Chinese Embassy in Washington, D.C. from New York. They were carrying a banner calling for the release of Wang Bingzhang, a renowned political prisoner.

2. Ms. He Geng (a US citizen from California and wife of Zhisheng Gao), accompanied by Ms. Yi Li (a former reporter of Voice of America) and Mr. Weimin Chen (a US citizen and famous sculptor), also arrived at the Chinese Embassy. They were displaying a short video demanding the release of human rights lawyer Zhisheng Gao.

3. Mr. Yan Zhao (a former researcher for the New York Times who lives near DC) and Ai Furong (Zhao's assistant), and a few others were not invited, so they were observing and photographing the

RECEIVED
DEC 29 2022
Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

plaintiff's production activities from a distance.

4. The purpose of Plaintiff Jin Yang and He Geng was to produce a video with pictures, speeches and subtitled commentary combining the experiences of Bingzhang Wang (a U.S. permanent resident abducted and imprisoned for years by the Chinese government) and Zhisheng Gao (a renowned human rights lawyer), using the Chinese Embassy as a backdrop.

5. In recent months, the Chinese Embassy's diplomatic wolf warriors in DC have not only forced the DC police to specifically target and remove only Chinese protestors' tents from the park close to the Chinese Embassy, but have also repeatedly flooded the sidewalks verbally abusing with loudhailers, chasing and intentionally hitting with vehicles, Chinese protestors near the Embassy. They have also worked with their security guards to set up false police reports, falsely claimed theft or assault, which resulted in repeated police evictions or arrests of Chinese protestors.

6. In order to avoid those kinds of conflicts and with a thorough understanding of international law, the plaintiff chose to record the video at a time when even the Chinese foreign affairs discipline stipulates that no one is allowed to go out after business hours and lights out at 9:30pm.

7. However, while the plaintiff and her associates were pulling up banners and setting up a projection camera on the empty sidewalk in front of the closed embassy gate, the dormitory windows of the Chinese Embassy suddenly opened, lights came on, and the Embassy personnel called the police inexplicably.

8. In a matter of moments, six or seven police cars arrived, a helicopter was overhead, and more than twenty armed Secret Service officers surrounded the plaintiff and her associates.

9. The police immediately discovered that Plaintiff and her associates were merely quietly working on a video projection. At the suggestion of the police, Plaintiff and her associates moved the filming

projector from the sidewalk in front of the closed Embassy's main entrance to the sidewalk on the left side of the Embassy, and continued with the filming activity that was scheduled to end in half an hour.

10. When Defendants Chinese Embassy and ICS Protective Service saw that the police did not arrest or evict the Chinese protestors as the police had done in broad daylight in the past, they disregarded international law prohibiting the use of consular premises to stir up trouble, and created one of the most serious international incidents, interfering in the domestic affairs of the United States since the Vienna Convention on Diplomatic Relations was enacted.

*Article 41* of the **Vienna Convention on Diplomatic Relations**

> 1. Without prejudice to their privileges and immunities, it is the duty of all persons enjoying such privileges and immunities to respect the laws and regulations of the receiving State. They also have a duty not to interfere in the internal affairs of that State.
> 2. All official business with the receiving State entrusted to the mission by the sending State shall be conducted with or through the Ministry for Foreign Affairs of the receiving State or such other ministry as may be agreed.
> 3. The premises of the mission must not be used in any manner incompatible with the functions of the mission as laid down in the present Convention or by other rules of general international law or by any special agreements in force between the sending and the receiving State.

12. After the Chinese side Defendants (Embassy and ICS Protective Services) called the police against the Plaintiff side (Plaintiff and her associates) who were standing outside the Embassy walls after the Embassy's closure, a *de facto* border confrontation between countries had been formed. While the Plaintiff side had not yet evacuated, the Defendant Chinese side should have remained on the premises in compliance with the international law.

13. However, the Chinese side Defendants, without experiencing any prejudice to their diplomatic immunities, quietly opened the doors four hours after closing, and took the first step toward a serious violation of United States laws and *Article 41(1)* of the Vienna Convention by disregarding the presence of US police force and by cross-border law enforcement with metal sharps.

14 The Chinese side Defendants, armed with metal sharps, approached and attempted to stop by force

the Plaintiff side who are U.S. citizens speaking and projecting. The Chinese side Defendants were in interference with the domestic affairs of the United States.

15 The Chinese side Defendants (the Embassy and ICS Protective Service) alternately used the pressure of the umbrella tips to force Plaintiff side, who were guarding the camera equipment, down several times a few feet off the sidewalk and onto the road, forcing them to be at risk of being struck in the back by motor vehicles. This was a specific criminal act using the embassy premise against U.S. citizens.

16. In the process of the Defendants' umbrella tip approaching, Plaintiff continued to protest and resist. Plaintiff Jin Yang's eyes seemed to be touched by shiny umbrella tip. Out of the instinct of self-defense, Plaintiff struggled to pull away the umbrella. International law provides that diplomats with immunity bear all the consequences of self-defense.

17. When the Chinese side Defendants repeatedly drove Plaintiff and her associates off the sidewalk in front of the embassy by falsely claiming that the sidewalk is also the property of the Embassy, the misled police officers rushed over to arrest Plaintiff because they saw Plaintiff was fighting back on the sidewalk.

18. Plaintiff was forcefully pulled by one police officer and fell heavily to the ground when she was out of balance. When Plaintiff half sat up, the three police officers still pounced on her and pressed their heavy bodies on her body, resulting in Plaintiff being hospitalized for 80 days afterwards, with severe physical and mental trauma. Plaintiff is still unable to walk normally.

19. Based on the above facts, Plaintiff names ICS Protective Service as the first defendant, because ICS Protective Service cooperated with the Chinese Embassy's cross-border law enforcement without immunity and without law enforcement authority, and as such ICS Protective Service is jointly and

severally liable for Plaintiff's injuries.

20. Based on the above facts, Plaintiff names the Chinese Embassy as the second defendant because, although enjoying state immunity, the Chinese Embassy as the initiator of the incident must assume responsibilities for violations of international laws and U.S. domestic laws and for interference in the domestic affairs of the United States. Subject to the contract with the ICS Protective Services and the lease with Department of State of the USA, any security deposits or penalties should be fully attributed to Plaintiff due to the Embassy's breach of these contracts.

21. Under civil law no-fault liability, Plaintiff names the Department of State of the United States of America as the third defendant because, as the landlord and owner of the property that is leased to the Embassy, the Department of State bears responsibilities for allowing a long and narrow curb between the sidewalk pavement where the plaintiff fell and the slope of the water dispersal in front of the embassy.

22. The contractor of the Chinese Embassy in the United States is China Construction America of South Carolina, Inc. a Chinese state-owned construction company with its headquarters in New Jersey and is therefore named as the fourth defendant.

23. As for the traitorous conduct of the U.S. police who, instead of protecting their own citizens, assisted the Chinese side Defendants in attacking and illegally arresting US citizens, Plaintiff will pursue criminal liability for police misconduct in a separate case.

24. After Plaintiff Jin Yang fled to the United States 30 years ago and became a U.S. citizen, the Chinese government continued to persecute her in every way possible. She was victimized several times by State Security agents, twice of which she lost her eyesight for months before regaining it. One of the agents, Zeng Dajun, was helped by the Consulate General in New York to unlock his

electronic shackles and escape back to China to serve as the deputy director of the State Security Department in Hubei Province.

25. Video footages from the incident show that the provocation, verbal abuse and besiege on Plaintiff by the Embassy personnel and ICS Protective Service were purely out of political retaliation, and when Plaintiff was injured and arrested, the defendants immediately put away their umbrella gear and withdrew to the Embassy, leaving the camera to continue projecting.

26. The ICS Protective Service guards, who have neither immunity nor law enforcement authority, helped the Embassy to attack US citizens this time, which is a continuation of their long history of illegally attacking protestors. In June 2022, when Chinese diplomat Xueyuan Xu grabbed the cell phone of Shugang Chen in a public place, the ICS Protective Service guards on the sidelines went up and injured Shugang Chen and illegally handcuffed him. Shuguang Chen was found innocent in court.

27. As a result of the pre-meditated provocation, besiege, and serious physical harm caused by the Chinese Embassy and ICS Protective Service onto U.S. citizens who were merely exercising their constitutional rights on U.S. land, these Defendants have egregiously violated international laws, U.S. domestic laws, and interfered in the domestic affairs of the United States, and have seriously hurt the feelings and dignity of the American people, and must be severely punished.

28. Plaintiff hereby files a lawsuit for $1.4 billion in civil punitive damages, to be shared by the four defendants named above.

DATED: 12/29/2022

*Jin Yang*

JIN YANG

2315 15th Ave. S, Seattle, WA 98144