UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JIN YANG**,<br><br>  Plaintiff,<br><br>  v.<br><br>**ICS PROTECTIVE SERVICES,** *et al.*,<br><br>  Defendants. | Case No. 1:22-cv-03836 (TNM) |

**MEMORANDUM OPINION**

This case arises from a sidewalk scuffle between protesters, security guards, and police outside the Chinese Embassy in Washington, D.C. One protestor, Jin Yang, now brings various claims for damages against the Embassy guards, the Embassy builder, and the Department of State. Defendants say the claims should be dismissed because the Court lacks subject matter jurisdiction or, alternatively, they fail on the merits.

The Court will dismiss the claims against State because Yang has not exhausted administrative remedies before suing. And the Court will dismiss the other Defendants because Yang has failed to allege facts sufficient for this Court to exercise diversity jurisdiction.

**I.**

In September 2022, Jin Yang and her photography assistant attended a protest outside the gates of the Chinese Embassy. *See* Compl. ¶¶ 1–2, ECF No. 1. Yang sought to film a video that would highlight China's mistreatment of a lawyer and a prisoner, using the Embassy as a backdrop. *See id.* ¶ 4.

Yang and the other protestors went to the Embassy around 9:00 p.m. to avoid the Embassy's guards, who have allegedly attacked protesters before the Embassy's 9:30 p.m.

1

curfew sets in. *See id.* ¶¶ 1, 5. Soon after arriving, Yang stepped over a "ditch" near the Embassy's gate, broke her foot, and sprained her groin area.[1] Pl.'s Opp'n to State Mot. to Dismiss ¶ 2 (Opp'n State MTD), ECF No. 31.[2] Undeterred, Yang stayed as the group set up a banner and projector. *See* Compl. ¶ 7.

Seeing the group, the Embassy called the police. *See id.* According to Yang, six or seven police cars, a helicopter, and twenty Secret Service agents then burst onto the scene. *See id.* ¶ 8. The police told Yang to move away from the front of the Embassy and go to the sidewalk on the left side. *See id.* ¶ 9. Yang obliged and kept filming. *See id.* But the Embassy wanted Yang and the other protestors gone. *See id.* ¶ 17. So the Embassy instructed its security guards—contractors from ICS Protective Service—to force the group off the sidewalk and into the street. *See id.* ¶¶ 12–15. According to Yang, "a de facto border confrontation between countries had been formed." *Id.* ¶ 12.

Armed with metal-tipped umbrellas, ICS guards chased the group. *See id.* ¶¶ 14–16. The guards then poked the demonstrators with the parasols' sharp ends, forcing the crowd backwards. *See id.* ¶ 15. When a guard jabbed an umbrella towards Yang's face, she reacted, pulling the weapon away. *See id* ¶ 16. Seeing the scuffle, the police approached Yang to arrest her. *See id.* ¶¶ 17–18. An officer then pulled Yang to the ground, at which point three other officers "pounced" on her, causing severe injuries. *See id.* ¶ 18. Yang was hospitalized for 80 days. *See id.*

---

[1] It is unclear whether the ditch refers to the sidewalk curb or another part of the Embassy.

[2] Because Yang is *pro se*, facts and exhibits in her responses to the motions to dismiss are treated as plead facts. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

Yang now sues the Chinese Embassy and ICS.[3]  She also brings claims against China Construction America of South Carolina, Inc., and the Department of State for their alleged roles in building and maintaining the Embassy sidewalk where she tripped.  *See id*. ¶¶ 21–22.  But Yang does not sue the police.  *See id*. ¶ 23.  Instead, she will "pursue criminal liability" against them in a separate case.  *See id*.  Yang asks for $1.4 billion in damages.  *See id*. ¶ 28.

ICS, State, and China Construction now move to dismiss.[4]  Defendants argue the claims should be tossed under both Rule 12(b)(1) and 12(b)(6).  Those motions are ripe for decision.

## II.

To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over her claims.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  The Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).  If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim.  *See* Fed. R. Civ. P. 12(b)(1).

To pass muster under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At this stage, the Court must accept a plaintiff's

---

[3]  Yang also purports to sue on behalf of other protestors.  She may not do so.  An individual "not a member of the bar of any court . . . may appear *pro se* but is not qualified to appear in [federal court] as counsel for others."  *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984).

[4]  Yang has yet to serve the Chinese Embassy.

factual allegations as true and grant in his favor "all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

Complaints filed by *pro se* litigants "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Although generally "the court may consider only the facts alleged in the Complaint, any documents either attached to or incorporated in the Complaint and matters of which the court may take judicial notice," *Hurd v. D.C. Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up), the Court must consider a *pro se* Complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152. But even *pro se* litigants must meet the minimum pleading standards required by the federal rules and the Constitution. *See Yellen v. U.S. Bank, Nat'l Assoc.,* 301 F. Supp. 3d 43, 47 (D.D.C. 2018).

### III.

### A.

Consider first Yang's claim against State. Yang contends that State is strictly liable for her slip-and-fall and subsequent assault because State is "the landlord and owner of the property that is leased to the Embassy." Compl. ¶ 21; *see* Opp'n State MTD at 1.

Yang identifies no law under which she is entitled to relief for her injuries as against State other than a reference to "civil law no-fault liability." Compl. ¶ 2. The Court construes Yang's claims against State as arising under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). The FTCA allows claims in civil actions for damages against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.*

4

State submits that if Yang is trying to sue under the FTCA, then she has sued the wrong defendant. *See* State Mot. to Dismiss (State MTD) at 3, ECF No. 28. State correctly points out that "[t]he United States of America is the only proper defendant in a suit under the FTCA." *Chandler v. BOP*, 226 F. Supp. 3d 1, 6 n.3 (D.D.C. 2016). So, State says, Yang must sue the United States itself. That is generally right. But because Yang is *pro se*, "the Court overlooks this pleading defect and instead treats plaintiff's claim as if it had been brought against the United States directly." *Id.*

Yet Yang's suit against State still fails. The "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *See Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) (cleaned up). The requirement to file an administrative claim before suit is a "jurisdictional prerequisite to the maintenance of a tort suit against the United States." *GAP Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987). Yang has not met this requirement. She concedes that "she has not filed a Standard Form 95 prior to naming" State as a defendant. Opp'n State MTD at 1. So Yang did not even start, much less exhaust, the administrative process before suing.

Though Yang has since filed an administrative claim, that will not save her claim. *See McNeil v. United States*, 508 U.S. 106, 112–13 (1993) (holding FTCA suit must be dismissed if plaintiff exhausts remedies after suing). Because she did not go through the administrative process first, the Court lacks jurisdiction over her suit against State. These claims are premature and thus must be dismissed.

B.

Now consider Yang's claims against ICS, the Embassy's security contractor. ICS contends that the Court lacks subject matter jurisdiction over Yang's claims against it based on derivative sovereign immunity. *See* ICS Mot. to Dismiss (ICS MTD) at 6–10, ECF No. 24-1. The Court agrees that it lacks subject matter jurisdiction over Yang's claims as plead, but for another reason.

1.

ICS relies on the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602, *et seq.*, for its claim of immunity. Under the FSIA, a foreign state and its agencies and instrumentalities cannot be sued in U.S. courts unless an exception applies. *See* 28 U.S.C. §§ 1604, 1605–07. The Chinese Embassy, a "part of [China's] political structure," qualifies as a "foreign state" under § 1603. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994). And ICS says that it shares the Embassy's immunity because it acted as the Embassy's contractor and agent.

ICS's immunity defense rests largely on *Butters v. Vance International, Inc.*, 225 F.3d 462, 465 (4th Cir. 2000). There, the Fourth Circuit recognized "derivative FSIA immunity" for a private U.S. contractor providing security to the Saudi royal family in the United States. *Id.* To get there, the court started with the "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity." *Id.* at 466 (citing *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21–22 (1940)). The court then took that settled law and transposed it to a new context—foreign sovereign immunity.

Because "all sovereigns need flexibility to hire private agents to aid them in conducting their governmental functions," the court reasoned that it was "but a small step" to extend the doctrine of domestic derivative sovereign immunity to the agents of foreign governments acting in the United States. *Id.* The Court declines ICS's invitation to take the same step here.

This Court does not write on a blank slate in evaluating *Butters*. In *Broidy Capital Management LLC v. Muzin*, a U.S. limited liability corporation claimed derivative sovereign immunity under *Butters* because it acted at the direction of Qatar. *See* 12 F.4th 789 (D.C. Cir. 2021). The D.C. Circuit rejected defendant's claim and *Butters*' reasoning. The Circuit noted that it had "never suggested a derivative immunity doctrine might apply in the foreign immunity context." *Id.* at 802. And by applying the FSIA to a private actor's claim of immunity, *Butters* took an approach "foreclosed" by subsequent Supreme Court precedent. *Id.* (citing *Samantar v. Yousuf*, 540 U.S. 305, 325 (2010)). More, the Circuit recognized that the reasoning behind immunity for contractors of the U.S. government does not necessarily map on to foreign agents. *See id.*

Though the Circuit in *Broidy* was "inclined" to reject the doctrine of derivative foreign sovereign immunity, it did not decide the question because defendants did not even meet the test the Fourth Circuit adopted. *Id.*; *see also id.* at 803 ("We do not suggest that we would apply a derivative immunity theory in the foreign official immunity context. But the allegations here could not support that defense in any event.").[5] So too here. The Court is skeptical that *Butters* follows Supreme Court precedent or the FSIA's text. In any event, ICS's theory of immunity fails on its own terms.

---

[5] The Ninth Circuit has held that derivative foreign sovereign immunity goes against Supreme Court precedent. *See WhatsApp Inc. v. NSO Techs. Ltd.*, 17 F.4th 930, 940 n.6 (9th Cir. 2021).

Assume ICS is right that the FSIA could protect a contractor from suit when the contractor acts at the direction of a foreign state. A foreign state is only "presumptively immune from the jurisdiction of the United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). And Yang invokes an exception to the FSIA—the non-commercial tort exception. *See* Pl.'s Opp'n to ICS Mot. to Dismiss at 1, ECF No. 26. That provision allows U.S. courts to hear claims of money damages for personal injury or death, unless, among other things, the case "is based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a).

ICS counters that the discretionary function exception applies here.[6] That exception applies—and sovereign immunity is maintained—if two conditions are met. First, the Court asks "whether any statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1143 (D.C. Cir. 2015). If a policy did govern the employee's conduct, his conduct was non-discretionary and subject to liability. *See id.* Second, if the defendant's conduct was discretionary, the Court asks if "the exercise of discretion [was] grounded in social, economic, or political goals," thus making it "an exercise of governmental judgment and so immune." *Id.*

ICS says that its contractors acted with discretion because they "were neither required to remain inside the Embassy nor expected to have acted in a particular manner to protect themselves under the circumstances." ICS MTD at 9, ECF No. 24. True enough. But ICS stumbles at step two. It never says how its decision to guard the Embassy was "grounded in social, economic, or political goals." *Banneker Ventures*, 798 F.3d at 1138 (cleaned up). And

---

[6] The discretionary function exception in the FSIA is modeled off a similar clause in the FTCA, "and interpretations under the FTCA are therefore applicable to the FSIA." *Maalouf v. Swiss Confederation*, 208 F. Supp. 2d 31, 35 (D.D.C. 2002).

ICS bears the burden of proving it is immune. *See Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019).

In any event, the Court finds that ICS's actions were not grounded in policy concerns, and thus fell outside the exception.

Consider *Usoyan v. Republic of Turkey*, 6. F.4th 31 (D.C. Cir. 2021). There, a group of protestors sued Turkey after being "violently physically attacked" by members of President Erdogan's security detail. *Id.* at 37. Relying on the FSIA's discretionary function exception, Turkey asserted sovereign immunity. It argued that all decisions about how to protect the president are amenable to policy analysis because those decisions required its personnel to balance varying security risk levels against the cost of specific enforcement actions. *See id.* at 46.

The D.C. Circuit rejected Turkey's claim of immunity. It explained that although the Turkish security force's protective mission was discretionary "as a general matter," the "[d]iscrete injury causing actions" complained of are "sufficiently separable from protected discretionary decisions to make the discretionary function exception inapplicable." *Id.* The focus is on the "specific conduct at issue." *Id.* at 47 (cleaned up). And *how* the security detail chose to exercise its discretion "can hardly be said to be grounded in regulatory policy." *Id.* So too here.

To be sure, decisions about how to protect an Embassy may be susceptible to policy analysis. For example, choices like "how much safety equipment should be provided to a particular embassy, how much training should be given to guards and embassy employees, and the amount of security-related guidance that should be provided necessarily entail[] balancing

9

competing demands for funds and resources." *Macharia v. United States*, 334 F.3d 61, 66 (D.C. Cir. 2003).

But that is not this case. Yang's claims arise from "a mere scuffle with guards." *Morgan v. Int'l Bank for Reconstruction & Dev.*, 752 F. Supp. 492, 495 (D.D.C. 1990). Her claims do not implicate the Embassy's decision about "how many security officers to deploy" or "how to train and arm them." *Usoyan*, 6 F.4th at 46. And "how the [ICS] security detail used those resources here is not a policy tradeoff." *Id.* (emphasis added); *cf. Gray v. Bell*, 712 F.2d 490, 508 (D.C. Cir. 1983) (explaining police officers' work does not "typically include" discretionary functions). So even if ICS could qualify for derivative foreign sovereign immunity, their actions protecting the Embassy amount to a basic task, not an immunized policy choice.

ICS's claim of immunity under the FSIA fails.

### 2.

But Yang faces a more basic problem. She alleges diversity jurisdiction under 28 U.S.C. § 1332. *See* Civil Cover Sheet, ECF No. 1-1. Though ICS does not argue diversity jurisdiction is lacking, defendant China Construction does. *See* CC Mot. to Dismiss (CC MTD) at 6–7, ECF No. 6. Plus, doubts about subject matter jurisdiction may be raised at any time, even by the Court sua sponte. *See Am. Library Ass'n v. FCC*, 401 F.3d 489 (D.C. Cir. 2005). The Court is mindful that it "must construe *pro se* filings liberally." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). But even so, the Complaint provides no basis for this Court's subject matter jurisdiction and thus must be dismissed against ICS and China Construction.

Diversity jurisdiction exists when the citizenship of each plaintiff is "diverse" from the citizenship of each defendant. *See* 28 U.S.C. § 1332(a); *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Without that, this Court lacks subject matter jurisdiction and must dismiss this case.

*See Lewis*, 519 U.S. at 68; Fed. R. Civ. P. 12(h)(3).  For diversity purposes, a natural person is the citizen of the State where he lives.  *See Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).  A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

Yang has not met her burden under Rule 12(b)(1) of showing complete diversity.  The Complaint alleges that Yang is a citizen of Washington state, and China Construction is headquartered in New Jersey.  *See* Compl. ¶¶ 1, 22.  But missing are any factual allegations about China Construction's place of incorporation.  And Yang has failed to allege the citizenship of ICS at all.

Without more, this Court, despite searching review, cannot assure itself that Yang's citizenship is different from that of ICS and China Construction.  So Yang cannot sue under the diversity statute.  Thus, the Court must dismiss the Complaint against these Defendants.[7]

**IV.**

For these reasons, the Court will dismiss the Complaint without prejudice against China Construction, ICS, and State.

A separate Order will issue today.

Dated: August 28, 2023                                                 TREVOR N. McFADDEN, U.S.D.J.

---

[7] The Court will not rule on Defendants' motions to dismiss for failure to state a claim because this Court does not have subject matter jurisdiction over the case.