UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JIN YANG,**<br><br>Plaintiff,<br><br>v.<br><br>**CHINA CONSTRUCTION AMERICA OF SOUTH CAROLINA, INC.**, *et al.*,<br><br>Defendants. | Case No. 1:22-cv-03836 (TNM) |

## MEMORANDUM ORDER

Plaintiff Jin Yang seeks $14 billion in damages following a scuffle with security guards and police officers on the sidewalk outside the Chinese Embassy. She sues a hodgepodge of Defendants—from the Embassy itself to the contractor that poured the sidewalk cement—claiming assault, battery, gross negligence, and premises liability. For the most part, Yang fails to plead facts to state a plausible claim for relief. But her assault and battery claims are just plausible enough to withstand dismissal. So the Court will deny the motion to dismiss on those claims. But it will grant Defendants' separate motions to dismiss on all others.

### I.

On the night of September 20, 2022, Jin Yang assembled a team of human rights activists outside the Chinese Embassy in Washington, D.C. Second Amended Complaint (SAC) ¶¶ 4–5, ECF No. 51. Her plan was to produce a video protesting the Chinese government's detention of human rights activists, using the Embassy as a backdrop. *Id*. ¶ 6. But after Yang and her crew began setting up the film equipment, the Embassy lights "illuminated," and within minutes, "six to seven patrol cars arrived on the scene." *Id*. ¶ 15. Not only that, "[o]ver twenty armed Secret Service officers encircled [Yang] and her associates," with a helicopter hovering overhead. *Id*.

Metropolitan Police Department officers instructed Yang and her companions to relocate to "the left side" of the Embassy, and they complied. *Id*. ¶ 16. But according to Yang, this was not good enough for the Embassy, which dispatched security guards "armed with long-handled weapons" to "forcibly expel" the protesters. *Id*. ¶¶ 17, 19. Still, Yang "stood her ground" while Embassy personnel and private security guards "approached" with "sharp weapons." *Id*. ¶ 20.

Yang's Complaint is short on details of what happened next. But at some point, "the sharp end of a gleaming umbrella touched [Yang]'s eyelashes" and she "instinctively used her hand to deflect the incoming umbrella tip," thereby "tear[ing] off the umbrella fabric." *Id*. ¶ 21. At another point, while attempting to "dodge" something, Yang "lost her balance" and "fell to the ground." *Id*. ¶ 22. Then the police "pounced," "pinning her to the ground." *Id*. The tackle caused Yang "lower limb paralysis." *Id*. She alleges that, to this day, "she can only walk with great difficulty with the aid of crutches." *Id*.

In December 2022, Yang filed suit against the Chinese Embassy, the State Department, ICS Protective Services (the Embassy's security contractor), and China Construction America of South Carolina (the construction contractor that allegedly poured the sidewalk concrete).[1] The Court dismissed Yang's initial Complaint without prejudice for failure to exhaust her remedies and plead sufficient facts to establish subject matter jurisdiction. *See Yang v. ICS Protective Servs.*, No. 1:22-cv-03836, 2023 WL 5528386 (D.D.C. Aug. 28, 2023). Yang then fixed the jurisdictional defects in her Amended Complaint. *See generally* Am. Compl., ECF No. 37. But the Court ordered her to file a Second Amended Complaint because many of her claims still "border[ed] on incomprehensible." Order re. Am. Compl. at 1, ECF No. 48. So Yang filed her Second Amended Complaint in February 2024. *See generally* SAC. Defendants separately

---

[1] Yang has not yet effected service on the Embassy under 28 U.S.C. § 1608.

moved to dismiss.  *See* ECF Nos. 53, 56, 61.  Those motions are now ripe.  Because Yang plausibly alleges that she was assaulted by ICS employees, the Court will deny ICS's motion to dismiss.  But Yang's other claims are not facially plausible, and the Court will grant Defendants' motions to dismiss on those.

## II.

Defendants all seek dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive dismissal under Rule 12(b), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

In general, pro se complaints are held to "less stringent standards" than those drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).  The Court therefore reads pro se complaints "in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).  Still, even pro se litigants must meet the minimum pleading standards required by the Federal Rules of Civil Procedure.  *Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018).

## III.

Yang's Second Amended Complaint raises assault and battery claims against ICS, a gross negligence claim against China Construction, and a premises liability claim against the United States.  The Court addresses the claims against each Defendant in turn.

A.

Start with Yang's claims against ICS, which she styles "assault and battery." SAC ¶¶ 25–28.  Under D.C. law, an assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the victim."  *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (cleaned up).  Battery, on the other hand, "is an intentional act that causes harmful or offensive bodily contact."  *Id*.  "Causation is an essential element of both causes of action."  *Garabis v. Unknown Officers of Metro. Police*, 961 F. Supp. 2d 91, 101 (D.D.C. 2013).  "The plaintiff must establish that the defendant's intentional acts caused the harmful or offensive bodily contact or the imminent apprehension of such contact."  *Id.*

Yang satisfies these requirement at this early stage.  Though her allegations that the "sharp end of a gleaming umbrella touched [her] eyelashes," SAC ¶ 21, may strike as fanciful or bizarre, they are not inherently implausible.  And it is certainly plausible that, viewed in the light most favorable to Yang, a swipe with an umbrella could threaten harm and cause harmful or offensive bodily contact.  Whether this alleged contact was in fact harmful or offensive to a reasonable person must wait at least until the parties have a chance to conduct discovery.  *Cf.* Restatement (Second) of Torts § 19 (1965) ("A bodily contact is offensive if it offends a reasonable sense of personal dignity.").  So the Court will deny Defendant ISC's motion to dismiss.[2]

B.

Next consider Yang's "gross negligence" claim against China Construction.  Yang alleges that China Construction negligently designed and constructed an uneven curb on the

---

[2] ICS also argues that the Court should dismiss Yang's claims because her Second Amended Complaint does not contain a "short and plain statement" showing she is entitled to relief and is not "simple, concise and direct," as required by Rule 8(a)(2) and (d)(1).  Though at times

sidewalk outside the Chinese Embassy. According to Yang, the curb is not only a tripping hazard but is ADA-non-compliant and has "enabled the Embassy to bring the public sidewalk under its jurisdiction." SAC ¶¶ 29–32.

To start, even assuming the curb was somehow negligently designed or constructed, Yang's claims are time barred. D.C. law permits plaintiffs to recover damages for "injury . . . resulting from the defective or unsafe condition of an improvement to real property." D.C. Code § 12-310(a). But plaintiffs must bring such actions "within the ten-year period beginning on the date the improvement was substantially completed." *Id.* Yang alleges that China Construction "completed [building the Embassy] on April 1, 2009." SAC ¶ 7. But her alleged injuries occurred in September 2022—over 13 years later. *Id.* ¶ 4. So Yang's gross negligence claim based on the allegedly uneven sidewalk is time-barred.

Now turn to the ADA angle. The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full an equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by anyone who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a). To have standing to sue under the ADA, a plaintiff must allege that (1) she is disabled, (2) "she has become aware of discriminatory conditions existing at a public accommodation" and (3) she is "deterred from visiting or patronizing that accommodation." *White v. Bank of America, N.A.*, 200 F. Supp. 3d 237, 243 (D.D.C. 2016) (cleaned up). Yang makes no such showing. She does not claim to be disabled. She points to

---

unclear, Yang's Second Amended Complaint still gives fair notice of the claims against ICS. So dismissal is not warranted on Rule 8 grounds. *See Ciralsky v. CIA*, 355 F.3d 661, 670 (D.C. Cir. 2004). ICS also moves for summary judgment on the pleadings. That motion is premature.

no discrimination against persons with disabilities. And she does not allege that the ramp prevented her from visiting the Embassy.

Yang's final claim related to the ramp is that it is part of the Embassy's scheme to surreptitiously gain "jurisdiction" over the "public sidewalk." SAC ¶ 30. Apparently, Yang believes that China Construction is complicit in the Chinese government's attempt to convert public property. The Court knows of no private right of action to recover unlawfully converted public property. And curiously, Yang appears to concede that the sidewalk *is* Embassy property, given to it (wrongfully, in her eyes) by the Department of State when it leased the land for the Embassy to China. SAC ¶ 34.

## C.

Finally, consider Yang's claims against the United States. Yang alleges "Premise Liability" against the Department of State, claiming that it is the "landlord of the Chinese Embassy" and therefore "bears the responsibility" for her injuries. SAC ¶ 34. Because Yang "did not receive a response from the Department of State," she names the United States as a defendant on State's behalf. *Id.* ¶ 35.

The Federal Tort Claims Act (FTCA) provides that "the United States shall be liable" for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Tort claims against the United States are adjudicated "in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b). So the law that governs is the law of the state where the alleged act took place. *See FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994).

Under D.C. law, "an owner or occupier of land" must exercise "reasonable care under all of the circumstances" to prevent unsafe conditions. *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 738

6

(D.C. 1988).  To state a claim for premises liability, Yang must allege that the United States (1) had actual or constructive notice of a dangerous condition, and (2) had the right to exercise control over that condition.  *Campbell v. Noble*, 962 A.2d 264, 266 (D.C. 2008).  If the owner "has ceded the entire possession and control of the premises to the tenant," then "the owner has no liability for incidents arising out of negligent or dangerous conditions on the premises." *Id.* (cleaned up).

Yang's premises liability claim fails to pass muster.  Yang does not allege that the United States knew or should have known of any defect in the sidewalk that it did not design or construct.  And she identifies no duty the United States owes as a landlord when it has "ceded the entire possession and control" to the Embassy.  *Campbell*, 962 A.2d at 266 (cleaned up).  This alone requires dismissal of the claim.

For her part, Yang asserts that the Vienna Convention on Diplomatic Relations prevents the United States from "evad[ing]" liability for the acts of its lessees.  *See* Pl.'s Opp'n to Def. United States' MTD ¶¶ 2–6.  But Yang points to no authority suggesting the Convention imposes such an obligation on third parties.  And even if she did, "the FTCA waives the immunity of the United States only to the extent that a private person in like circumstances could be found liable in tort under local law." *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985).  It does not waive liability for claims based on international law.  Because Yang fails to show that the United States owed her a duty of care, her premises liability claim against the United States will be dismissed.[3]

---

[3] Although Yang alleges that U.S. Secret Service officers were present at her arrest, SAC ¶ 22, she does not bring any claims against the Service or any other federal agency for battery and assault.  Nor does Yang bring any battery or assault claim against MPD, which in any case is not an agent of the United States.

**IV.**

Yang pled sufficient facts to sustain her assault and battery claims against ICS. So ICS's motion to dismiss must be denied. As to her other claims, the Court warned Yang that any future dismissal would likely be with prejudice. Order re. Am. Compl. at 3. The standard for dismissing a complaint without prejudice in this Circuit is "high." *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006). But after three rounds of complaints, it is now clear that Yang's gross negligicence and premises liability claim are subject to legal deficiencies that she cannot cure by "alleg[ing] additional facts." *Id*. at 584. So the Court will dismiss those claims against China Construction and the United States with prejudice.

It is hereby,

**ORDERED** that Defendant ISC Protective Services' Motion to Dismiss Plaintiff's Second Amended Compliant or, Strike the Second Amended Compliant or, in the Alternative for Summary Judgment is DENIED; it is

**FURHTER ORDERED** that Defendant China Construction of America of South Carolina's Motion to Dismiss Second Amended Complaint is GRANTED and Plaintiff's gross negligence claim is DISMISSED WITH PREJUDICE; it is

**FURTHER ORDERED** that Defendant United States' Motion to Dismiss is GRANTED and Plaintiff's premises liability claim against the United States is DISMISSED WITH PREJUDICE.

**SO ORDERED.**

Dated: September 3, 2024                                         TREVOR N. McFADDEN, U.S.D.J.